James **HURST, Individually and d/b/a Pegues–Hurst Ford, Pegues–Hurst Motor Company, Appellants,**

v.

**AMERICAN RACING EQUIPMENT, INC., and Larry T. Hayes, Individually and d/b/a Longview Wheel and Performance, Appellees.**

No. 06–97–00125–CV.

Court of Appeals of Texas, Texarkana.

Argued Sept. 24, 1998.

Decided Oct. 16, 1998.

Eric D. Pearson, Sayles & Lidji, P.C., Dallas, for appellant.

Snow E. Bush, Jr., Longview, Mike A. Hatchell, Molly H. Hatchell, Ramey & Flock, Tyler, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

James Hurst, individually and d/b/a Pegues–Hurst Ford, Pegues–Hurst Motor Company (Hurst),[1] appeals from an adverse summary judgment in his suit seeking indemnification from American Racing Equipment (ARE) and Larry Hayes, individually and d/b/a Longview Wheel and Performance (LWP).

Hurst contends that the trial court should not have granted summary judgment in favor of ARE and LWP because it is their duty to indemnify him for payments that he made to the plaintiffs in an earlier suit settling their claims against him based upon negligence and products liability.

Mark LeTourneau and others (LeTourneau), the plaintiffs in the underlying suit (none of whom are part of this appeal), were injured in a van rollover allegedly caused by defective after-market wheels. LeTourneau sued ARE, the manufacturer of the wheels, LWP, who distributed the wheels, and Hurst, who installed the wheels. As a result of a mediation in which Hurst participated, ARE and LWP settled with LeTourneau. In the mediation agreement, entitled "Memorandum of Settlement," LeTourneau agreed to dismiss with prejudice all claims against ARE and LWP and to dismiss with prejudice any cause of action for products liability against Pegues–Hurst and James Hurst. After this mediation agreement was signed, but before the settlement order was filed with the trial

---

1. When the name "Hurst" is used, it applies to the individual, as well as Pegues–Hurst Ford and Pegues–Hurst Motor Company. Any necessary differentiation between the positions of the different entities will be made clear in the context of the discussion.

court, Hurst separately settled with LeTourneau. Thereafter, all causes of action by all parties (including a cross-claim for indemnity filed by Hurst) were dismissed.

After the settlements were entered, Hurst sued ARE and LWP in the present case. In this suit, Hurst claimed that his settlement was for products liability and demanded that ARE and LWP indemnify him for the expense of his settlement under the authority of Section 82.002 of the Civil Practice and Remedies Code, which requires manufacturers to indemnify sellers for products liability recoveries.[2] ARE and LWP sought summary judgment because they had previously settled all products liability claims [3] against all parties and because there was no finding that ARE or LWP was liable in the underlying suit. The trial court granted summary judgment in two generic orders.

The summary judgment evidence showed that LeTourneau purchased the wheels from Hurst, that Hurst had purchased the wheels from LWP, and that LWP had purchased the wheels from ARE. LeTourneau alleged (in relevant part) that Hurst negligently inspected and serviced the wheels as a part of the initial purchase and installation. Two lug bolts on one of the wheels had sheared off. LeTourneau had new ones installed by a friend. LeTourneau then went to Hurst and asked him to examine the installation to be sure that the incident would not recur. Hurst examined the vehicle and told LeTourneau that the lug bolts were fine. Later, all of the lug bolts on the right back wheel sheared off while the van was in operation.

The deposition testimony attached to the motions for summary judgment indicates that the particular wheel may have had a design flaw, or that the wrong type of lug bolts was used to attach them, or that the bolts themselves were not precisely the right size for this particular wheel, and further indicated that Hurst's representative did not adequately examine the wheels and bolts to discover the problems.

The following timetable of the events during and after the mediation in the underlying lawsuit is important to our consideration of the issues in this appeal:

2/12/97 Mediation agreement signed between ARE, LWP, and LeTourneau

2/13/97 Hurst settles claims brought against it by LeTourneau

2/14/97 Hurst nonsuits claim for indemnity against ARE

2/17/97 Confidential settlement agreement and release between ARE and LeTourneau signed

**2.** Tex. Civ. Prac. & Rem.Code Ann. § 82.002 (VERNON 1997) READS AS FOLLOWS:

**§ 82.002. Manufacturer's Duty to Indemnify**
(a) A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.
(b) For purposes of this section, "loss" includes court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages.
(c) Damages awarded by the trier of fact shall, on final judgment, be deemed reasonable for purposes of this section.
(d) For purposes of this section, a wholesale distributor or retail seller who completely or partially assembles a product in accordance with the manufacturer's instructions shall be considered a seller.
(e) The duty to indemnify under this section:
(1) applies without regard to the manner in which the action is concluded; and
(2) is in addition to any duty to indemnify established by law, contract, or otherwise.

(f) A seller eligible for indemnification under this section shall give reasonable notice to the manufacturer of a product claimed in a petition or complaint to be defective, unless the manufacturer has been served as a party or otherwise has actual notice of the action.
(g) A seller is entitled to recover from the manufacturer court costs and other reasonable expenses, reasonable attorney fees, and any reasonable damages incurred by the seller to enforce the seller's right to indemnification under this section.

**3.** A products liability action is defined as:

[A]ny action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.
TEX. CIV. PRAC & REM.CODE ANN. § 82.001(2) (Vernon 1997).

2/17/97 Compromise settlement agreement and release of all claims between LeTourneau and LWP signed

2/18/97 Settlement and release between Hurst and LeTourneau signed

2/24/97 Agreed order of dismissal with prejudice dismissing ARE

4/18/97 Motion by LeTourneau to dismiss LWP

4/21/97 Order dismissing LWP

Hurst filed this lawsuit against ARE and LWP on April 11, 1997.

Summary judgment is proper when the movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex.1979); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377 (Tex.App.—Texarkana 1989, no writ). In the present case, there is no dispute about the facts, but instead the dispute is about the application of the law.

Hurst takes the position that his claim for indemnity rests solely upon Section 82.002. This statute has never been cited or analyzed by any court since its enactment in 1993.[4] The question before this Court is whether the trial judge correctly decided, as a matter of law, that Hurst was not entitled to be indemnified for the payments that he made to LeTourneau in his settlement of the claims raised against him.

■ Hurst contends that the trial court erred if it rested its judgment upon the concept that there was no showing of manufacturer's negligence. Under the statute, no finding of manufacturer's liability is required before the statute can be applied. The stat-

ute categorically states that the duty to indemnify applies without regard to the manner in which the action is concluded. This argument is therefore correct.

■ Hurst also contends that ARE and LWP failed to demonstrate that no issue of material fact existed about whether the underlying products liability claims were settled. This is not necessarily a question of fact. The issue at hand is not a factual query, but the interpretation of a settlement agreement. The interpretation of an unambiguous contract is a question of law. *Edwards v. Lone Star Gas Co.*, 782 S.W.2d 840, 841 (Tex.1990); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex.1983). Where multiple documents control the same transaction, even when they are executed at different times, we are to read those documents together. *Board of Ins. Comm'rs v. Great Southern Life Ins. Co.*, 150 Tex. 258, 239 S.W.2d 803, 809 (1951); *Hardeman v. Parish*, 730 S.W.2d 813, 814 (Tex.App.—El Paso 1987, writ ref'd n.r.e.); *see Tubb v. Bartlett*, 862 S.W.2d 740, 747–48 (Tex.App.-El Paso 1993, writ denied). The intent of the parties must therefore be deduced by examining the agreement and the release together. *Memorial Med. Ctr. of East Texas v. Keszler*, 943 S.W.2d 433, 434 (Tex.1997).

■ In his original petition in the present case, Hurst claimed that his settlement payment to LeTourneau was based solely upon strict products liability. The settlement document does not indicate the purpose of the payment and, at the time of settlement, Hurst was being sued on theories of negligence, under the DTPA, and under theories of products liability.[5]

---

**4.** This Court discussed the statute in *Casa Ford v. Ford Motor Co.*, 951 S.W.2d 865, 869 (Tex.App.—Texarkana 1997, writ denied), but concluded that it did not apply in that case because the original lawsuit was filed before the effective date of the statute. The original lawsuit in this case was filed after the statute went into effect.

**5.** The exception to the indemnity statute involves any loss caused by improper action by that retailer. The manufacturer is not required to indemnify a retailer for injuries caused by the retailer's own negligence, intentional misconduct, etc. The statute does provide that in a products liability action a manufacturer shall indemnify a seller

except for losses caused by the seller's negligence, intentional misconduct, or other act or omission. A seller remains liable for his own negligence, but can recover indemnity from the manufacturer for damages caused by the defective product. Thus, although the term "innocent retailer" as set out in *Humana Hosp. Corp. v. American Med. Sys., Inc.*, 785 S.W.2d 144 (Tex. 1990), was not adopted by the statute, much of the concept was incorporated. This case involved products liability, which could potentially have been recovered from the retailer, but also had a negligence element concerning negligent installation and examination that was necessarily

The manufacturers sought summary judgment because they had already settled the products liability claims brought by LeTourneau before Hurst executed a settlement and also because there was no judicial finding of liability upon which to base a claim for indemnity. As previously discussed, the statute appears to have done away with the need for a judicial finding of liability.

■ The question of whether the products liability claims against all parties had already been settled before Hurst entered his own settlement is the dispositive question. The key document is the mediation agreement. This document, entitled "Memorandum of Settlement," is in large part handwritten and contains language making it clear that it is indeed an enforceable agreement, stating categorically that the parties agree to "execute and deliver such additional agreements and documents as shall be necessary to carry out the purposes of this agreement, and that this agreement may be enforced as any other contract." It explicitly provides that LeTourneau will dismiss with prejudice *any* causes of action for products liability against Hurst. This agreement was signed February 12, 1997.

Hurst argues that he had to independently settle with LeTourneau because the settlements of the other parties did not protect him from liability.[6] This is only partially correct. The mediation agreement protected Hurst from any cause of action for products liability, but would not have protected Hurst from claims based upon his own negligence or wrongdoing. Hurst contends that because ARE and LWP failed to settle LeTourneau's claims against Hurst, it was necessary for Hurst to then enter into direct negotiations with LeTourneau. The record reflects that all parties, including Hurst's counsel, were present during the mediation. Further, it is quite clear that the mediation agreement, signed by ARE, LWP, and LeTourneau, explicitly settled any products liability claims against Hurst, but did not purport in any way to settle the other outstanding claims against Hurst.

■ Hurst nevertheless contends that since the "final" settlement document these other parties filed with the trial court does not mention Hurst, he had no protection from any products liability claims that LeTourneau might later raise. There are two problems with this position. First, as previously set out, rules of contract interpretation are to be used in reviewing settlement agreements. The settlement agreement filed with the court does not contain language to indicate that it is to supersede the mediation agreement, and the mediation agreement does contain language indicating that it is fully enforceable. Thus, the mediation agreement provided protection to Hurst against any potential claim by LeTourneau based upon products liability theories. Further, Hurst was a participant in that mediation and was fully aware that the agreement as signed would eliminate LeTourneau's ability to recover from Hurst on a products liability theory, and thus eliminate Hurst's right to obtain indemnity from the other defendants based on the claim of products liability.

In addition, between the date of the mediation agreement and the date that the "final" settlement document was filed with the court by ARE and LWP, Hurst had already signed and filed his own settlement agreement with LeTourneau, requiring dismissal. It was therefore no longer necessary for ARE to include language requiring dismissal of the cause against Hurst—Hurst had handled that himself. Regardless of Hurst's settlement, LeTourneau had already contracted to release all products liability claims.

■ Hurst further argues that even if the mediation agreement is effective and controlling, there remains a question of fact as to whether all aspects of Hurst's business operation was protected thereby. The lawsuit was originally filed by LeTourneau against "James Hurst, Individually and d/b/a/ Pe-

---

directed at Hurst, and for which Hurst would have been liable.

**6.** Although we have no signed agreement in the record, Hurst stated in his pleadings that his settlement with LeTourneau was reached on February 13, 1997, one day after the mediation agreement was signed.

gues–Hurst Ford, Pegues–Hurst Motor Company." The handwritten mediation agreement stated that LeTourneau would dismiss *any* cause of action for products liability against Pegues–Hurst and James Hurst. It did not specify "Ford" or "Motor Company." However, it is clear that LeTourneau agreed to dismiss both business entities (along with James Hurst, individually), since the agreement does not specify one or the other and since "Pegues–Hurst" is a part of both names.

It is also noteworthy that in the "General Release and Settlement Agreement" on which Hurst relies for his own settlement of the underlying suit brought by LeTourneau, reference is made to "James Hurst, Individually and d/b/a Pegues–Hurst Motor Company (hereinafter 'Pegues–Hurst') ...." even though Pegues–Hurst Ford was also named as a "d/b/a" defendant. It is therefore apparent that Hurst was satisfied in that release and settlement with this reference for both business entities, and it is likely that the attorneys who drafted the mediation agreement saw no necessity for any more specific identification than "Pegues–Hurst."

The mediation agreement was adequate to act as a release of Hurst and Pegues–Hurst in all of its corporate or partnership forms. Since Hurst's products liability had been released before he entered his separate settlement, there was nothing remaining for LeTourneau to release except their claims of negligence against Hurst, and they did so through that separate settlement.

The concept behind products liability is to shift such liability to the manufacturer. The mediation agreement did so and protected the retailer against such liability. Thus, Hurst's agreement should not be able to add an additional layer of liability that could not otherwise exist. The contract is clear; thus, the trial court had the duty to rule on its meaning as a matter of law, and summary judgment was therefore properly rendered.

■ Hurst also contends that even if the manufacturer's settlement was wholly effective to protect him from claims of products liability, he remains entitled to attorney's fees and costs associated with his defense of the underlying suit. As previously stated, Section 82.002(a) provides that, "A manufacturer shall indemnify ... a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, ... for which the seller is independently liable." In Section 82.002(b), "loss" is defined as including reasonable attorney's fees, court costs, and other reasonable expenses. ARE argues that the former "innocent retailer" rule as incorporated into the statute wholly eliminates any right to recover attorney's fees and costs.

The statute does not, however, so clearly incorporate the entirety of that rule as ARE suggests. Rather, it indicates that Hurst could recover attorney's fees and costs associated with defending a products liability claim, but not for any attorney's fees or costs associated with defending claims arising out of Hurst's own negligence. The problem with Hurst's claim for recovery of attorney's fees and costs is that the manufacturers stood alongside Hurst in the underlying lawsuit and were in fact defending the products liability claims in that suit, claims for which the manufacturers-not Hurst-would ultimately be liable. At the same time, Hurst was in the position of defending the entirely separate claims of negligence brought against him and cannot now argue that all of his attorney's fees and costs were based upon the claims of products liability.

We conclude that summary judgment on the issue of attorney's fees and costs was not properly taken as a matter of law. Accordingly, we sever this question from the remainder of the case and remand to the trial court for further proceedings the issue of the recovery of attorney's fees and costs, as sought under the statute. Tex.R.App. P. 43.2(a); *see Atlantic Richfield Co. v. Long Trusts,* 860 S.W.2d 439, 451 (Tex.App.—Texarkana 1993, writ denied).

The portion of the judgment denying recovery for indemnification is affirmed, the claim for attorney's fees and costs is severed, and that claim is reversed and remanded for further proceedings consistent with this opinion.