**FREIGHTLINER CORPORATION and Meritor Automotive Inc., f/k/a International Corporation d/b/a Rockwell International Plastic Products, Appellants,**

v.

**RUAN LEASING COMPANY, Appellee.**

**No. 03–99–00212–CV.**

Court of Appeals of Texas, Austin.

Nov. 18, 1999.

facturers) appeal the district court's grant of summary judgment requiring them to indemnify Ruan Leasing Company. Ruan asserted a claim against the manufacturers for indemnification arising out of its defense of a products liability action. The manufacturers dispute the district court's construction of a manufacturer's duty to indemnify under sections 82.001 and 82.002 of the Texas Products Liability Act.[1] We will affirm the summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

While en route from North Carolina to Texas, truck driver Paul Hampton stopped at a truck stop to check his engine. In order to open the hood, Hampton stood on foot-holes in the bumper and pulled on the hood-handle, which broke. Hampton fell to the ground, seriously injuring himself. He then filed a defective product claim against Freightliner, the manufacturer of the truck, and Rockwell, the manufacturer of the hood. Hampton also filed a vicarious liability claim against Ruan as the owner and lessor of the truck. Freightliner and Rockwell agreed to assume Ruan's defense. However, when the manufacturers developed an alternative hypothesis of liability suggesting Ruan might be negligent for failing to maintain the hood of the truck, a direct conflict of interest arose, requiring Ruan to obtain separate counsel. Ruan did so, and then as "seller"[2] of the truck, Ruan filed a cross-claim for indemnification against both Freightliner and Rockwell under section 82.002 of the 1993 products liability act.[3] Freightliner and Rockwell moved for

Rene Forinash McElhaney, Fulbright & Jaworski, L.L.P., San Antonio, for Freightliner Corporation.

Dan Horn, Maloney, Bean & Horn, P.C., Irving, for Meritor Automotive, Inc.

Jeffrey S. Boyd, Thompson & Knight, Austin, for Appellee.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and YEAKEL.

BEA ANN SMITH, Justice.

Freightliner Corporation and Rockwell International Plastic Products (the manu-

---

1. Tex. Civ. Prac. & Rem.Code Ann. §§ 82.001–.002 (West 1997).

2. Ruan's status as "lessor" qualifies it as a "seller" for the purpose of section 82.001(3) of the Texas Civil Practice & Remedies Code. See Tex. Civ. Prac. & Rem.Code Ann. § 82.001(3) (West 1997) (defining "seller" as any person engaged in the business of placing the product into the stream of commerce for commercial purposes); Rourke v. Garza, 530

S.W.2d 794, 800 (Tex.1975) (noting that a "lessor" is one who introduces products into the channels of commerce and therefore qualifies as "seller" for purposes of section 82.001(3)). Therefore, we will refer to Ruan as a "seller."

3. Tex. Civ. Prac. & Rem.Code Ann. §§ 82.001, .002.

summary judgment on Ruan's indemnity claim, but the trial court denied these motions. Later, Hampton and the manufacturers settled all claims arising out of the incident, and Hampton voluntarily nonsuited his claims against Ruan. Only Ruan's indemnity claim remained pending. The manufacturers contend that because negligence was alleged and because Ruan assumed its own defense, they do not have to pay for attorney's fees and other costs as required by section 82.002(a) and (b). *See* Tex. Civ. Prac. & Rem.Code Ann. § 82.002(a), (b) (West 1997). In one issue challenging the lower court's interpretation of a manufacturer's duty to indemnify, the manufacturers appeal the district court's grant of summary judgment in favor of Ruan.

## DISCUSSION

■ The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The function of summary judgment is not to deprive litigants of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. *See Swilley v. Hughes*, 488 S.W.2d 64, 68 (Tex.1972). In the present case, there is no dispute about the facts; instead the dispute entails statutory interpretation and the application of law.

The primary issue before this Court is whether, under the 1993 Texas Products Liability Act, a mere allegation of seller's negligence relieves a manufacturer of the duty to indemnify an innocent seller. *See*

Tex. Civ. Prac. & Rem.Code Ann. §§ 82.001–.002. Section 82.002(a) of the products liability act requires a manufacturer to indemnify a seller for all loss that the seller incurs in a products liability action, except for any loss caused by the seller's own conduct:

A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

*Id.* § 82.002(a).

Before the adoption of this act, the common law placed an onerous burden on sellers to prove a product defective before having a right to indemnity against manufacturers. Sellers had to bring an entirely separate action against the manufacturers to prove this. In order to better protect consumers and innocent sellers, the legislature adopted the 1993 act, expanding the manufacturer's duty to indemnify sellers "except for any loss caused by seller's negligence." *Id.* The legislature's new policy focused primary liability on manufacturers, noting that they are usually in a better position to recognize and remedy defects. The supreme court relied on this policy in deciding *Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, 42 Tex. Sup.Ct. J. 985 (Tex.1999) (broadly interpreting the manufacturer's duty to indemnify sellers, even sellers not in the chain of distribution).

First, the new law ensured that the relatively small seller need not fear litigation involving problems that are really not in its control. Second, it established uniform rules of liability so that manufacturers could make informed business decisions and plaintiffs could understand their rights. The Legislature sought to protect both manufacturers and sellers, but gave preference to sellers with no independent liability.

42 Tex. Sup.Ct. J. at 989, 996 S.W.2d at 868–69.

When the statute's language is unambiguous, as in the present case, the intent of the legislature is determined from the plain meaning of the words of the statute. *See id.* at 986, 996 S.W.2d at 866. When legislative intent is obvious from the language of the statute, "it is vain to ask the courts to attempt to liberate an invisible spirit, supposed to live concealed within the body of the law." *Id.* at 986, 996 S.W.2d at 866. The 1993 legislation turned the common law on its head. "The Legislature must have been aware it was creating a new duty, not codifying existing law, because the statute says that the duty to indemnify under this section is in addition to any duty to indemnify established by law, contract, or otherwise." *Id.* at 989, 996 S.W.2d at 868–69. The manufacturer in *Fitzgerald* insisted that the legislature must have meant to codify some but change other aspects of the common law; the supreme court held that it was "just as likely that the Legislature's purpose was to pass on the costs of products litigation from an innocent seller to the manufacturer without regard to the manner in which the action is concluded." *Id.* at 988, 996 S.W.2d at 868. This expansive reading of the manufacturer's duty to indemnify would seem to compel us to hold that the manufacturer is presumed liable for the defective product and that, without a finding of seller's independent liability, the seller is entitled to indemnity.

Despite the unambiguous language of the statute and the policy articulated in the products liability act, Freightliner and Rockwell raise three arguments to defeat their duty of indemnity to Ruan: (1) the definition of products liability action under the 1993 act does not include negligence claims; (2) because Freightliner and Rockwell offered to defend Ruan and Ruan chose to represent itself, Freightliner and Rockwell should not be required to pay indemnification; and (3) the legislature's policy in the 1993 act was to level the allocation of risk between manufacturers and sellers, not to reverse the common law by placing an onerous burden of proof on manufacturers.

### Definition of "Products Liability Action"

The manufacturers argue that because Ruan failed to separate the cost of defending the negligence action from the cost of defending the defective products claim, they owe no indemnity to Ruan. They rely on *Hurst v. American Racing Equipment, Inc.* to support the proposition that the definition of "products liability action" under section 82.001(2) does not include a negligence claim. *See* 981 S.W.2d 458, 463 (Tex.App.—Texarkana 1998, no pet.); Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2). The *Hurst* court correctly stated that the statute eliminates the need for a judicial finding of the manufacturer's liability before a duty to indemnify attaches. *See Hurst*, 981 S.W.2d at 462. The statute categorically states that the duty to indemnify applies without regard to the manner in which the action is concluded. *See id.* at 461. However, the *Hurst* court also said that the products liability act indicates that the seller can only recover its defense costs for responding to a products liability claim and cannot recover the fees it incurred in defending an independent negligence claim. *See id.* at 463. Specifically, the *Hurst* court explained that because Hurst, the seller, participated in a mediation agreement which shifted the costs of defending the products liability claim entirely to the manufacturer, the manufacturer owed no duty to indemnify Hurst for costs associated with defending the negligence claim. *See id.* Hurst contended that even if the mediation agreement and subsequent settlement between the manufacturer and the plaintiff protected him from liability for defective-products claims, he remained entitled to attorney's fees and costs associated with his defense of the underlying negligence suit. *See id.* The court responded that because the manufacturers would be ulti-

mately liable for the products liability claims, they should cover costs associated specifically with the products liability claim and that Hurst was in the best position to defend the negligence claim brought against him. *See id.* We disagree and decline to follow this holding.

▮▮▮ The *Hurst* decision ignores the plain meaning of the act, which permits recovery of *any loss* arising out of a products liability *action,* not claim; the statute recognizes that such an action may involve several theories or claims. *See* Tex. Civ. Prac. & Rem.Code Ann. § 82.002(a). The language plainly defines a "products liability action" to include *"any action* against a manufacturer or seller for ... damages ... *allegedly caused by* a defective product whether the action is *based in strict tort liability, strict products liability, negligence ... or any other theory or combination of theories." Id.* § 82.001(2) (emphasis added). There were no findings of negligence here. Section 82.002(a) clearly states that only loss *caused by* the seller's negligence will defeat a duty to indemnify. *See id.* § 82.002(a). Furthermore, Freightliner and Rockwell's assertion that any allegation of seller's negligence precludes indemnification would make it all too easy for manufacturers to avoid the duty to indemnify by making bogus claims of negligence against an innocent seller and would encourage factually deficient or misleading assertions. This would defeat the purpose of the statute.

▮▮▮ If the manufacturers' argument were correct, then a loss caused by the seller's negligence would never be a loss arising out of a products liability action; and if, as the manufacturers contend, a plaintiff's claim of seller's negligence were not a part of the products liability action, then there would be no need for the exception in section 82.002(a). The exception is clearly intended to make a loss caused by the seller's negligence a part of the products liability action. Reading the definition of a "products liability action" in section 82.001(2) and the exception in section 82.002(a), we recognize that Hampton's negligence claim against Ruan was in fact part of the entire products liability action. We reject the *Hurst* holding that costs for defending a negligence claim must be separated from costs for a defense of the products liability action and that the seller can recover costs from the manufacturer for only the latter.

### Manufacturers' Offer to Defend Ruan

▮▮▮ In their second argument, the manufacturers point to their offer to pay for Ruan's defense and argue that Ruan's decision to provide its own counsel precludes its right to indemnity from the manufacturers. Ruan did accept the manufacturers' assistance in defending the products liability action until Hampton filed an amended pleading raising a negligence claim against Ruan. Hampton's amended pleading, based on a questionable report by one of the manufacturers' own experts, created an inherent conflict of interest between Ruan and the manufacturers. Ruan could no longer rely on the manufacturers' representation. We reject this rather disingenuous rationale for avoiding indemnification.

### Legislative Policy

As their final argument, the manufacturers assert that by enacting the 1993 act, the legislature intended to level the allocation of risk between the manufacturers and sellers, creating a delicate balance between various competing interests; it did not intend to "turn the tables" on manufacturers by replacing the common-law requirement that sellers prove a product defective before claiming indemnity with a statutory directive requiring manufacturers to indemnify sellers *unless* manufacturers prove sellers negligent. To support their perceived legislative policy, the manufacturers point to statutory language that the manner in which the suit is concluded does not affect the indemnity obligation. *See* Tex. Civ. Prac. & Rem.Code Ann. § 82.002(e)(1). They contend that the

right to indemnity no longer depends on a finding that the product was defective *or* a finding that the seller was negligent. They argue that requiring indemnification unless the seller is found to be independently liable would discourage settlement. We find that argument unpersuasive. But more importantly, we read section 82.002(a) of the products liability act to require the manufacturer to indemnify the seller unless it is *proven*, not merely alleged, that seller's conduct caused the loss. Although the manufacturers propose an alternative manner of allocating risk between manufacturers and sellers, we must enforce the statute as it is written.

We conclude as a matter of law that the manufacturers owe Ruan a duty to indemnify and, therefore, overrule the manufacturers' sole issue on appeal.

### CONCLUSION

We agree with the district court's determination that a manufacturer has the duty to indemnify the seller against loss arising out of a products liability action unless the loss was caused by the seller's independent liability. A mere allegation of the seller's negligence does not relieve a manufacturer of this duty to indemnify. Therefore, we affirm the summary judgment in favor of Ruan, holding Freightliner and Rockwell responsible for all court costs and reasonable expenses and fees associated with the defense of this products liability action, including the underlying negligence claim.