TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00212-CV








Freightliner Corporation and Meritor Automotive Inc., f/k/a International Corporation
d/b/a Rockwell International Plastic Products, Appellants


v.



Ruan Leasing Company, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 95-11284, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 







 Freightliner Corporation and Rockwell International Plastic Products (the
manufacturers) appeal the district court's grant of summary judgment requiring them to indemnify
Ruan Leasing Company. Ruan asserted a claim against the manufacturers for indemnification
arising out of its defense of a products liability action. The manufacturers dispute the district
court's construction of a manufacturer's duty to indemnify under sections 82.001 and 82.002 of
the Texas Products Liability Act. (1) We will affirm the summary judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 While en route from North Carolina to Texas, truck driver Paul Hampton stopped
at a truck stop to check his engine. In order to open the hood, Hampton stood on foot-holes in
the bumper and pulled on the hood-handle, which broke. Hampton fell to the ground, seriously
injuring himself. He then filed a defective product claim against Freightliner, the manufacturer
of the truck, and Rockwell, the manufacturer of the hood. Hampton also filed a vicarious
liability claim against Ruan as the owner and lessor of the truck. Freightliner and Rockwell
agreed to assume Ruan's defense. However, when the manufacturers developed an alternative
hypothesis of liability suggesting Ruan might be negligent for failing to maintain the hood of the
truck, a direct conflict of interest arose, requiring Ruan to obtain separate counsel. Ruan did so,
and then as "seller" (2) of the truck, Ruan filed a cross-claim for indemnification against both
Freightliner and Rockwell under section 82.002 of the 1993 products liability act. (3)
 Freightliner
and Rockwell moved for summary judgment on Ruan's indemnity claim, but the trial court denied
these motions. Later, Hampton and the manufacturers settled all claims arising out of the
incident, and Hampton voluntarily nonsuited his claims against Ruan. Only Ruan's indemnity
claim remained pending. The manufacturers contend that because negligence was alleged and
because Ruan assumed its own defense, they do not have to pay for attorney's fees and other costs
as required by section 82.002(a) and (b). See Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a),
(b) (West 1997). In one issue challenging the lower court's interpretation of a manufacturer's
duty to indemnify, the manufacturers appeal the district court's grant of summary judgment in
favor of Ruan.


DISCUSSION

 The standards for reviewing a motion for summary judgment are well established:
(1) the movant for summary judgment has the burden of showing that no genuine issue of material
fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether there is
a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant 
will be taken as true; and (3) every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in its favor. See Nixon v. Mr. Property Management Co.,
690 S.W.2d 546, 548-49 (Tex. 1985). The function of summary judgment is not to deprive
litigants of the right to trial by jury, but to eliminate patently unmeritorious claims and defenses. 
See Swilley v. Hughes, 488 S.W.2d 64, 68 (Tex. 1972). In the present case, there is no dispute
about the facts; instead the dispute entails statutory interpretation and the application of law.

 The primary issue before this Court is whether, under the 1993 Texas Products
Liability Act, a mere allegation of seller's negligence relieves a manufacturer of the duty to
indemnify an innocent seller. See Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001-.002. Section
82.002(a) of the products liability act requires a manufacturer to indemnify a seller for all loss that
the seller incurs in a products liability action, except for any loss caused by the seller's own
conduct: 


A manufacturer shall indemnify and hold harmless a seller against loss arising out
of a products liability action, except for any loss caused by the seller's negligence,
intentional misconduct, or other act or omission, such as negligently modifying or
altering the product, for which the seller is independently liable.



Id. § 82.002(a).


 Before the adoption of this act, the common law placed an onerous burden on
sellers to prove a product defective before having a right to indemnity against manufacturers. 
Sellers had to bring an entirely separate action against the manufacturers to prove this. In order
to better protect consumers and innocent sellers, the legislature adopted the 1993 act, expanding
the manufacturer's duty to indemnify sellers "except for any loss caused by seller's negligence." 
Id. The legislature's new policy focused primary liability on manufacturers, noting that they are
usually in a better position to recognize and remedy defects. The supreme court relied on this
policy in deciding Fitzgerald v. Advanced Spine Fixation Systems, Inc., 42 Tex. Sup. Ct. J. 985,
1999 WL 450861 (July 1, 1999) (broadly interpreting the manufacturer's duty to indemnify
sellers, even sellers not in the chain of distribution).


First, the new law ensured that the relatively small seller need not fear litigation
involving problems that are really not in its control. Second, it established uniform
rules of liability so that manufacturers could make informed business decisions and
plaintiffs could understand their rights. The Legislature sought to protect both
manufacturers and sellers, but gave preference to sellers with no independent
liability.



42 Tex. Sup. Ct. J. at 989. 

 When the statute's language is unambiguous, as in the present case, the intent of
the legislature is determined from the plain meaning of the words of the statute. See id. at 986. 
When legislative intent is obvious from the language of the statute, "it is vain to ask the courts
to attempt to liberate an invisible spirit, supposed to live concealed within the body of the law." 
Id. at 986. The 1993 legislation turned the common law on its head. "The Legislature must have
been aware it was creating a new duty, not codifying existing law, because the statute says that
the duty to indemnify under this section is in addition to any duty to indemnify established by law,
contract, or otherwise." Id. at 989. The manufacturer in Fitzgerald insisted that the legislature
must have meant to codify some but change other aspects of the common law; the supreme court
held that it was "just as likely that the Legislature's purpose was to pass on the costs of products
litigation from an innocent seller to the manufacturer without regard to the manner in which the
action is concluded." Id. at 988. This expansive reading of the manufacturer's duty to indemnify
would seem to compel us to hold that the manufacturer is presumed liable for the defective
product and that, without a finding of seller's independent liability, the seller is entitled to
indemnity.

 Despite the unambiguous language of the statute and the policy articulated in the
products liability act, Freightliner and Rockwell raise three arguments to defeat their duty of 
indemnity to Ruan: (1) the definition of products liability action under the 1993 act does not
include negligence claims; (2) because Freightliner and Rockwell offered to defend Ruan and
Ruan chose to represent itself, Freightliner and Rockwell should not be required to pay
indemnification; and (3) the legislature's policy in the 1993 act was to level the allocation of risk
between manufacturers and sellers, not to reverse the common law by placing an onerous burden
of proof on manufacturers.


Definition of "Products Liability Action"

 The manufacturers argue that because Ruan failed to separate the cost of defending
the negligence action from the cost of defending the defective products claim, they owe no
indemnity to Ruan. They rely on Hurst v. American Racing Equipment, Inc. to support the 
proposition that the definition of "products liability action" under section 82.001(2) does not
include a negligence claim. See 981 S.W.2d 458, 463 (Tex. App.--Texarkana 1998, no pet.); Tex.
Civ. Prac. & Rem. Code Ann. § 82.001(2). The Hurst court correctly stated that the statute
eliminates the need for a judicial finding of the manufacturer's liability before a duty to indemnify
attaches. See Hurst, 981 S.W.2d at 462. The statute categorically states that the duty to
indemnify applies without regard to the manner in which the action is concluded. See id. at 461. 
However, the Hurst court also said that the products liability act indicates that the seller can only
recover its defense costs for responding to a products liability claim and cannot recover the fees
it incurred in defending an independent negligence claim. See id. at 463. Specifically, the Hurst
court explained that because Hurst, the seller, participated in a mediation agreement which shifted
the costs of defending the products liability claim entirely to the manufacturer, the manufacturer
owed no duty to indemnify Hurst for costs associated with defending the negligence claim. See
id. Hurst contended that even if the mediation agreement and subsequent settlement between the
manufacturer and the plaintiff protected him from liability for defective-products claims, he
remained entitled to attorney's fees and costs associated with his defense of the underlying
negligence suit. See id. The court responded that because the manufacturers would be ultimately
liable for the products liability claims, they should cover costs associated specifically with the
products liability claim and that Hurst was in the best position to defend the negligence claim
brought against him. See id. We disagree and decline to follow this holding.

 The Hurst decision ignores the plain meaning of the act, which permits recovery
of any loss arising out of a products liability action, not claim; the statute recognizes that such an
action may involve several theories or claims. See Tex. Civ. Prac. & Rem. Code Ann.
§ 82.002(a). The language plainly defines a "products liability action" to include "any action
against a manufacturer or seller for . . . damages . . . allegedly caused by a defective product
whether the action is based in strict tort liability, strict products liability, negligence . . . or any
other theory or combination of theories." Id. § 82.001(2) (emphasis added). There were no
findings of negligence here. Section 82.002(a) clearly states that only loss caused by the seller's
negligence will defeat a duty to indemnify. See id. § 82.002(a). Furthermore, Freightliner and
Rockwell's assertion that any allegation of seller's negligence precludes indemnification would
make it all too easy for manufacturers to avoid the duty to indemnify by making bogus claims of
negligence against an innocent seller and would encourage factually deficient or misleading
assertions. This would defeat the purpose of the statute.

 If the manufacturers' argument were correct, then a loss caused by the seller's
negligence would never be a loss arising out of a products liability action; and if, as the
manufacturers contend, a plaintiff's claim of seller's negligence were not a part of the products
liability action, then there would be no need for the exception in section 82.002(a). The exception
is clearly intended to make a loss caused by the seller's negligence a part of the products liability
action. Reading the definition of a "products liability action" in section 82.001(2) and the
exception in section 82.002(a), we recognize that Hampton's negligence claim against Ruan was
in fact part of the entire products liability action. We reject the Hurst holding that costs for
defending a negligence claim must be separated from costs for a defense of the products liability
action and that the seller can recover costs from the manufacturer for only the latter.


Manufacturers' Offer to Defend Ruan

 In their second argument, the manufacturers point to their offer to pay for Ruan's
defense and argue that Ruan's decision to provide its own counsel precludes its right to indemnity
from the manufacturers. Ruan did accept the manufacturers' assistance in defending the products
liability action until Hampton filed an amended pleading raising a negligence claim against Ruan. 
Hampton's amended pleading, based on a questionable report by one of the manufacturers' own
experts, created an inherent conflict of interest between Ruan and the manufacturers. Ruan could
no longer rely on the manufacturers' representation. We reject this rather disingenuous rationale
for avoiding indemnification.


Legislative Policy

 As their final argument, the manufacturers assert that by enacting the 1993 act, the
legislature intended to level the allocation of risk between the manufacturers and sellers, creating
a delicate balance between various competing interests; it did not intend to "turn the tables" on
manufacturers by replacing the common-law requirement that sellers prove a product defective
before claiming indemnity with a statutory directive requiring manufacturers to indemnify sellers
unless manufacturers prove sellers negligent. To support their perceived legislative policy, the
manufacturers point to statutory language that the manner in which the suit is concluded does not
affect the indemnity obligation. See Tex. Civ. Prac. & Rem. Code Ann. § 82.002(e)(1). They
contend that the right to indemnity no longer depends on a finding that the product was defective
or a finding that the seller was negligent. They argue that requiring indemnification unless the
seller is found to be independently liable would discourage settlement. We find that argument
unpersuasive. But more importantly, we read section 82.002(a) of the products liability act to
require the manufacturer to indemnify the seller unless it is proven, not merely alleged, that
seller's conduct caused the loss. Although the manufacturers propose an alternative manner of
allocating risk between manufacturers and sellers, we must enforce the statute as it is written.

 We conclude as a matter of law that the manufacturers owe Ruan a duty to
indemnify and, therefore, overrule the manufacturers' sole issue on appeal.


CONCLUSION

 We agree with the district court's determination that a manufacturer has the duty
to indemnify the seller against loss arising out of a products liability action unless the loss was
caused by the seller's independent liability. A mere allegation of the seller's negligence does not
relieve a manufacturer of this duty to indemnify. Therefore, we affirm the summary judgment
in favor of Ruan, holding Freightliner and Rockwell responsible for all court costs and reasonable
expenses and fees associated with the defense of this products liability action, including the
underlying negligence claim.



 


 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: November 18, 1999

Publish
1. Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001-.002 (West 1997).
2. Ruan's status as "lessor" qualifies it as a "seller" for the purpose of section 82.001(3) of
the Texas Civil Practice & Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. § 82.001(3) 
(West 1997) (defining "seller" as any person engaged in the business of placing the product into
the stream of commerce for commercial purposes); Rourke v. Garza, 530 S.W.2d 794, 800 (Tex.
1975) (noting that a "lessor" is one who introduces products into the channels of commerce and
therefore qualifies as "seller" for purposes of section 82.001(3)). Therefore, we will refer to
Ruan as a "seller."
3. Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001, .002.




acturers' Offer to Defend Ruan

 In their second argument, the manufacturers point to their offer to pay for Ruan's
defense and argue that Ruan's decision to provide its own counsel precludes its right to indemnity
from the manufacturers. Ruan did accept the manufacturers' assistance in defending the products
liability action until Hampton filed an amended pleading raising a negligence claim against Ruan. 
Hampton's amended pleading, based on a questionable report by one of the manufacturers' own
experts, created an inherent conflict of interest between Ruan and the manufacturers. Ruan could
no longer rely on the manufacturers' representation. We reject this rather disingenuous rationale
for avoiding indemnification.


Legislative Policy

 As their final argument, the manufacturers assert that by enacting the 1993 act, the
legislature intended to level the allocation of risk between the manufacturers and sellers, creating
a delicate balance between various competing interests; it did not intend to "turn the tables" on
manufacturers by replacing the common-law requirement that sellers prove a product defective
before claiming indemnity with a statutory directive requiring manufacturers to indemnify sellers
unless manufacturers prove sellers negligent. To support their perceived legislative policy, the
manufacturers point to statutory language that the manner in which the suit is concluded does not
affect the indemnity obligation. See Tex. Civ. Prac. & Rem. Code Ann. § 82.002(e)(1). They
contend that the right to indemnity no longer depends on a finding that the product was defective
or a finding that the seller was negligent. They argue that requiring indemnification unless the
seller is found to be independently liable would discourage settlement. We find that argument
unpersuasive. But more importantly, we read section 82.002(a) of the products liability act to
require the manufacturer to indemnify the seller unless it is proven, not merely alleged, that
seller's conduct caused the loss. Although the manufacturers propose an alternative manner of
allocating risk between manufacturers and sellers, we must enforce the statute as it is written.

 We conclude as a matter of law that the manufacturers owe Ruan a duty to
indemnify and, therefore, overrule the manufacturers' sole issue on appeal.


CONCLUSION

 We agree with the district court's determination that a manufacturer has the duty
to indemnify the seller against loss arising out of a products liability action unless the loss was
caused by the seller's independent liability. A mere allegation of the seller's negligence does not
relieve a manufacturer of this duty to indemnify. Therefore, we affirm the summary judgment
in favor of Ruan, holding Freightliner and Rockwell responsible for all court costs and reasonable
expenses and fees associated with the defense of this products liability action, including the
underlying negligence claim.



 


 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: November 18, 1999

Publish
1. Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001-.002 (West 1997).
2. Ruan's status as "lessor" qualifies it as a "seller" for the purpose of section 82.001(3) of
the Texas Civil Practice & Remedies Code. See Tex. Civ. Prac. &