NUMBER 13-99-174-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI



___________________________________________________________________


E. I. DU PONT DE NEMOURS

AND COMPANY, Appellant,


v.


BEE AGRICULTURAL COMPANY, Appellee.

___________________________________________________________________


On appeal from the 36th District Court 


of Bee County, Texas.


___________________________________________________________________


O P I N I O N



Before Justices Hinojosa, Chavez, and Rodriguez



Opinion by Justice Chavez




 

 This case concerns a retailer's right to indemnity from the
manufacturer of a product that becomes the subject of a products
liability lawsuit. In this case the trial court granted a summary
judgment in favor of the manufacturer on the products liability issue,
and ordered the manufacturer to pay the retailer's costs, expenses, and
attorney's fees incurred in defending the products liability case. The
manufacturer appeals from the order to pay costs, expenses, and
attorney's fees. We affirm.

 Du Pont manufactured a herbicide that it marketed under the
brand name "Accent." Ernest Boemer bought Accent from Bee
Agricultural Company (Bee Ag) and applied it to his crops. Boemer
alleged that Accent damaged his crops, and sued Du Pont and Bee Ag
("the Accent case"), asserting causes of action for breach of warranty,
common law strict liability, fraud, negligent misrepresentation, and
violations of the Deceptive Trade Practices Act. Although these causes
of action were alleged against the defendants generally, the only facts
pleaded by Boemer supporting his fraud, negligent misrepresentation,
and DTPA causes of action concerned the actions of Du Pont. Boemer
did not allege any wrongdoing on the part of Bee Ag independent of Du
Pont in the Accent case.

 Bee Ag and Judy Schauer, the widow and heir of Fred Schauer,(1)
then filed a separate case against Boemer to collect debts allegedly
owed to them by Boemer ("the collection case"). Boemer
counterclaimed in the collection case, reasserting his Accent related
claims, and also stating a claim for breach of fiduciary duty. Boemer's
claim for breach of fiduciary duty concerned allegations that Fred
Schauer had promised to provide credit to Boemer and induced Boemer
into a dependent relationship on Schauer, which Schauer then exploited
for his own personal gain and to the detriment of Boemer. 

 Bee Ag then filed additional pleadings seeking indemnity from Du
Pont under section 82.002 of the Texas Civil Practice and Remedies
Code. Bee Ag entered into a settlement agreement with Boemer,
accepting a promissory note and 45% of the net proceeds from
Boemer's claim against Du Pont in satisfaction of its collection claims
against Boemer. Boemer stipulated that his sole remaining cause of
action against Bee Ag after the settlement agreement was a DTPA
unconscionability claim. The trial court then granted a summary
judgment motion brought by Du Pont and entered a take-nothing
judgment in the Accent case. A bench trial was held on the issue of
Bee Ag's indemnification claim, and the trial court ordered Du Pont to
pay $61,442.38 to Bee Ag.

 On appeal, Du Pont advances several arguments against the
award to Bee Ag. First, Du Pont argues that, because Boemer asserted
fraud, negligent misrepresentation, and a DTPA claim against Bee Ag,
Bee Ag does not qualify for indemnity under section 82.002. Du Pont
argues that it should not be responsible for costs incurred in the
collection case, and that Bee Ag failed to segregate its attorney's fees
between the Accent case and the collection case. Du Pont also
contends that the settlement between Bee Ag and Du Pont left Bee Ag
with a conflict of interest in the Accent litigation, and that
indemnification should not be available under these kinds of
circumstances.

 Section 82.002(a) provides:

A manufacturer shall indemnify and hold harmless a seller
against loss arising out of a products liability action, except
for any loss caused by the seller's negligence, intentional
misconduct, or other act or omission, such as negligently
modifying or altering the product, for which the seller is
independently liable.


Tex. Civ. Prac. & Rem. Code Ann. § 82.002(a) (Vernon 1997).

 Du Pont argues that, because Boemer advanced fraud, negligent
misrepresentation, and DTPA claims against Bee Ag, Bee Ag's
attorney's fees are at least partially attributable to the allegations that
Bee Ag had engaged in negligence or intentional misconduct. Bee Ag
contends that mere allegations of wrongdoing are not sufficient to
remove an innocent retailer from the indemnification offered by section
82.002.

 Texas appellate courts have reached somewhat contradictory
conclusions on this issue. In Hurst v. American Racing Equip., 981
S.W.2d 458 (Tex. App.--Texarkana 1998, no pet.) the plaintiff had been
injured when lug bolts broke off of his van. He sued the manufacturer,
distributor, and retailer of the wheels on products liability grounds, and
also asserted a cause of action against the retailer for negligent
inspection and installation of the wheels. Id. at 460. The court of
appeals held that the retailer was not entitled to indemnification for
attorney's fees from the manufacturer because it was required to
defend against the negligence action, and could not argue that all of its
attorney's fees were incurred in defense of the products liability claim. 
Id. at 463. 

 In Freightliner Corp. v. Ruan Leasing Co., 6 S.W.3d 726 (Tex.
App.--Austin 1999, pet. granted) a truck driver was injured while trying
to open the hood of a truck when the hood-handle broke. In addition to
products liability claims against the owner of the truck and the
manufacturers of the truck and the hood, allegations also arose that the
owner had been negligent in its maintenance of the hood. The Austin
court declined to follow Hurst and held that a mere allegation of
negligence, without a finding of actual liability, is not sufficient to defeat
the claim for indemnity. Id. at 731-32.

 However, we need not choose a side in the split between the
Texarkana Court's Hurst opinion and the Austin Court's Freightliner
opinion. Although Boemer's fraud, negligent misrepresentation, and
DTPA claims were asserted generally, the only facts pleaded to support
those claims concerned the action of Du Pont only. There is no
reference to any negligence or intentional misconduct on the part of Bee
Ag that would make it "independently liable." Rather, it is apparent that
Boemer's only allegations against Bee Ag in the Accent case concern
Bee Ag's potential liability for selling the product manufactured by Du
Pont. Furthermore, for the one claim that did allege independent
liability against Bee Ag, the breach of fiduciary duty claim asserted in
the collection case, Bee Ag did segregate its attorney fees, unlike in
Hurst or Freightliner.

 Bee Ag retained separate counsel for the Accent case and the
collection case. Bee Ag sought indemnification for only the fees
incurred by Meredith, Donnell, & Abernathy, the law firm it employed
for the Accent case. Du Pont argues that some of the items listed in the
billing records for Meredith, Donnell, & Abernathy pertained to the
collection case. The billing records do contain occasional references to
brief consultations with Ward Thomas, Bee Ag's lawyer for the
collection case, and reviewing letters and documents from that case. 
These activities constitute a tiny minority of the time billed. In order for
Meredith, Donnell, & Abernathy to provide appropriate legal services to
Bee Ag in the Accent case, it was necessary that the law firm maintain
at least a cursory familiarity with the progress of the collection case
involving the same parties. Eventually the two cases were
consolidated, further emphasizing the appropriateness of a lawyer
working on the Accent case remaining informed about events in the
collection case. We find nothing improper in permitting Bee Ag to
obtain indemnification for the occasional references to the collection
case in the law firm's billing records.

 Du Pont also complains that the conduct of Bee Ag in accepting
a percentage of Boemer's possible recovery against Du Pont in
settlement of its claims against him presented Bee Ag with a conflict of
interest, and this conflict should prevent Bee Ag from receiving
indemnification. Du Pont argues that permitting Bee Ag to recover is
"contrary to the public policies identified in State Farm Fire and Cas. Co.
v. Gandy, 925 S.W.2d 696 (Tex. 1996)," and violates its Due Process
rights. 

 In Gandy, the Texas Supreme Court held that a settlement
agreement violated public policy and was void where the plaintiff and
defendant agreed on liability of $6 million, but the plaintiff agreed not
to seek collection from the defendant, instead accepting assignment of
the defendant's rights to collect the $6 million from the defendant's
insurer. The Texas Supreme Court noted that the right to assign a
cause of action arises from the common law, not statutory law, and has
its roots in equity, not law. Id. at 705-07. As arbiter of Texas common
law, the Texas Supreme Court refused to permit the assignment
arranged by the parties in Gandy. Id. at 719. 

 However, the issue in the instant case is not whether Bee Ag
should be permitted to act as the assignee of Boemer's claims against
Du Pont, but whether Bee Ag is entitled to statutory indemnity under
section 82.002 of the Texas Civil Practice and Remedies Code. 
Therefore, Gandy and its discussion of the common law and public
policy are inapposite.

 Du Pont makes no argument in support of its "Due Process" point. 
It does cite two cases, but does not explain how either supports its
appeal. In the first case, Kalteyer v. Sullivan, 46 S.W. 288 (Tex. Civ.
App--San Antonio 1898, writ ref'd), the court invalidated an order of the
city of San Antonio granting Sullivan the right to close an alley. The
court held that owners of property along the alley such as Kalteyer had
property interests in the alley which the city council could not take
away. Id. at 290-91. In Stevens v. City of Dublin, 169 S.W. 188 (Tex.
Civ. App.--Fort Worth 1914, no writ), the court held that a municipality
had exceeded its police powers in permanently closing a street that
passed next to a school. Although neither opinion mentions the term
"Due Process" nor invokes the Constitution, both cases do refer to
property rights of the plaintiffs and the government's lack of authority
to remove those property rights, which seems referable to
Constitutional Due Process protections. Nevertheless, we fail to see,
and appellant has not troubled itself to explain, how the property rights
asserted in those cases are relevant to the instant case. We conclude
that Du Pont has failed to demonstrate any violation of its Due Process
rights.

 Having overruled all of the arguments asserted by the appellant,
we affirm the judgment of the trial court.

 MELCHOR CHAVEZ

 Justice




Publish.

TEX. R. APP. P. 47.3.


Opinion delivered and filed this

the 29th day of June, 2000.





1. It is apparent from the record that Fred Schauer worked with
Bee Ag. His precise role with Bee Ag is not explained.