**E.I. DU PONT DE NEMOURS AND COMPANY, Appellant,**

v.

**BEE AGRICULTURAL COMPANY, Appellee.**

No. 13–99–174–CV.

Court of Appeals of Texas, Corpus Christi.

June 29, 2000.

Rehearing Overruled Aug. 3, 2000.

Bruce D. Viles, Gordon D. Laws, Gary, Thomasson, Hall & Marks, Patrick Wolter, Clay E. Coalson, Meredith, Donnell & Abernethy, Corpus Christi, for Appellant.

Before Justices HINOJOSA, CHAVEZ, and RODRIGUEZ.

## OPINION

MELCHOR CHAVEZ, Justice.

This case concerns a retailer's right to indemnity from the manufacturer of a product that becomes the subject of a products liability lawsuit. In this case the trial court granted a summary judgment in favor of the manufacturer on the products liability issue, and ordered the manufacturer to pay the retailer's costs, expenses, and attorney's fees incurred in defending the products liability case. The manufacturer appeals from the order to pay costs, expenses, and attorney's fees. We affirm.

Du Pont manufactured a herbicide that it marketed under the brand name "Accent." Ernest Boemer bought Accent from Bee Agricultural Company (Bee Ag) and applied it to his crops. Boemer alleged that Accent damaged his crops, and sued Du Pont and Bee Ag ("the Accent case"), asserting causes of action for breach of warranty, common law strict liability, fraud, negligent misrepresentation, and violations of the Deceptive Trade Practices Act. Although these causes of action were alleged against the defendants generally, the only facts pleaded by Boemer supporting his fraud, negligent misrepresentation, and DTPA causes of action concerned the actions of Du Pont. Boemer did not allege any wrongdoing on the part of Bee Ag independent of Du Pont in the Accent case.

Bee Ag and Judy Schauer, the widow and heir of Fred Schauer,[1] then filed a separate case against Boemer to collect debts allegedly owed to them by Boemer ("the collection case"). Boemer counterclaimed in the collection case, reasserting his Accent related claims, and also stating a claim for breach of fiduciary duty. Boemer's claim for breach of fiduciary duty concerned allegations that Fred Schauer had promised to provide credit to Boemer and induced Boemer into a dependent relationship on Schauer, which Schauer then exploited for his own personal gain and to the detriment of Boemer.

Bee Ag then filed additional pleadings seeking indemnity from Du Pont under section 82.002 of the Texas Civil Practice and Remedies Code. Bee Ag entered into a settlement agreement with Boemer, accepting a promissory note and 45% of the net proceeds from Boemer's claim against Du Pont in satisfaction of its collection claims against Boemer. Boemer stipulated that his sole remaining cause of action against Bee Ag after the settlement agreement was a DTPA unconscionability claim. The trial court then granted a summary judgment motion brought by Du Pont and entered a take-nothing judgment in the Accent case. A bench trial was held on the issue of Bee Ag's indemnification claim, and the trial court ordered Du Pont to pay $61,442.38 to Bee Ag.

On appeal, Du Pont advances several arguments against the award to Bee Ag. First, Du Pont argues that, because Boemer asserted fraud, negligent misrepresentation, and a DTPA claim against Bee Ag, Bee Ag does not qualify for indemnity under section 82.002. Du Pont argues that it should not be responsible for costs incurred in the collection case, and that Bee Ag failed to segregate its attorney's fees between the Accent case and the collection case. Du Pont also contends that the settlement between Bee Ag and Du Pont left Bee Ag with a conflict of interest in the Accent litigation, and that indemnification should not be available under these kinds of circumstances.

Section 82.002(a) provides:

A manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

TEX.CIV.PRAC. & REM.CODE ANN. § 82.002(a) (Vernon 1997).

■ Du Pont argues that, because Boemer advanced fraud, negligent misrepresentation, and DTPA claims against Bee Ag, Bee Ag's attorney's fees are at least partially attributable to the allegations that Bee Ag had engaged in negligence or intentional misconduct. Bee Ag contends that mere allegations of wrongdoing are not sufficient to remove an innocent retailer from the indemnification offered by section 82.002.

---

1. It is apparent from the record that Fred Schauer worked with Bee Ag. His precise role with Bee Ag is not explained.

Texas appellate courts have reached somewhat contradictory conclusions on this issue. In *Hurst v. American Racing Equip.*, 981 S.W.2d 458 (Tex.App.—Texarkana 1998, no pet.) the plaintiff had been injured when lug bolts broke off of his van. He sued the manufacturer, distributor, and retailer of the wheels on products liability grounds, and also asserted a cause of action against the retailer for negligent inspection and installation of the wheels. *Id.* at 460. The court of appeals held that the retailer was not entitled to indemnification for attorney's fees from the manufacturer because it was required to defend against the negligence action, and could not argue that all of its attorney's fees were incurred in defense of the products liability claim. *Id.* at 463.

In *Freightliner Corp. v. Ruan Leasing Co.*, 6 S.W.3d 726 (Tex.App.—Austin 1999, pet. granted) a truck driver was injured while trying to open the hood of a truck when the hood-handle broke. In addition to products liability claims against the owner of the truck and the manufacturers of the truck and the hood, allegations also arose that the owner had been negligent in its maintenance of the hood. The Austin court declined to follow *Hurst* and held that a mere allegation of negligence, without a finding of actual liability, is not sufficient to defeat the claim for indemnity. *Id.* at 731–32.

However, we need not choose a side in the split between the Texarkana Court's *Hurst* opinion and the Austin Court's *Freightliner* opinion. Although Boemer's fraud, negligent misrepresentation, and DTPA claims were asserted generally, the only facts pleaded to support those claims concerned the action of Du Pont only. There is no reference to any negligence or intentional misconduct on the part of Bee Ag that would make it "independently liable." Rather, it is apparent that Boemer's only allegations against Bee Ag in the Accent case concern Bee Ag's potential liability for selling the product manufactured by Du Pont. Furthermore, for the

one claim that did allege independent liability against Bee Ag, the breach of fiduciary duty claim asserted in the collection case, Bee Ag *did* segregate its attorney fees, unlike in *Hurst* or *Freightliner.*

Bee Ag retained separate counsel for the Accent case and the collection case. Bee Ag sought indemnification for only the fees incurred by Meredith, Donnell, & Abernathy, the law firm it employed for the Accent case. Du Pont argues that some of the items listed in the billing records for Meredith, Donnell, & Abernathy pertained to the collection case. The billing records do contain occasional references to brief consultations with Ward Thomas, Bee Ag's lawyer for the collection case, and reviewing letters and documents from that case. These activities constitute a tiny minority of the time billed. In order for Meredith, Donnell, & Abernathy to provide appropriate legal services to Bee Ag in the Accent case, it was necessary that the law firm maintain at least a cursory familiarity with the progress of the collection case involving the same parties. Eventually the two cases were consolidated, further emphasizing the appropriateness of a lawyer working on the Accent case remaining informed about events in the collection case. We find nothing improper in permitting Bee Ag to obtain indemnification for the occasional references to the collection case in the law firm's billing records.

Du Pont also complains that the conduct of Bee Ag in accepting a percentage of Boemer's possible recovery against Du Pont in settlement of its claims against him presented Bee Ag with a conflict of interest, and this conflict should prevent Bee Ag from receiving indemnification. Du Pont argues that permitting Bee Ag to recover is "contrary to the public policies identified in *State Farm Fire and Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996)," and violates its Due Process rights.

In *Gandy*, the Texas Supreme Court held that a settlement agreement violated public policy and was void where the plain-

tiff and defendant agreed on liability of $6 million, but the plaintiff agreed not to seek collection from the defendant, instead accepting assignment of the defendant's rights to collect the $6 million from the defendant's insurer. The Texas Supreme Court noted that the right to assign a cause of action arises from the common law, not statutory law, and has its roots in equity, not law. *Id.* at 705–07. As arbiter of Texas common law, the Texas Supreme Court refused to permit the assignment arranged by the parties in *Gandy. Id.* at 719.

However, the issue in the instant case is not whether Bee Ag should be permitted to act as the assignee of Boemer's claims against Du Pont, but whether Bee Ag is entitled to statutory indemnity under section 82.002 of the Texas Civil Practice and Remedies Code. Therefore, *Gandy* and its discussion of the common law and public policy are inapposite.

Du Pont makes no argument in support of its "Due Process" point. It does cite two cases, but does not explain how either supports its appeal. In the first case, *Kalteyer v. Sullivan,* 18 Tex.Civ.App. 488, 46 S.W. 288 (San Antonio 1898, writ ref'd), the court invalidated an order of the city of San Antonio granting Sullivan the right to close an alley. The court held that owners of property along the alley such as Kalteyer had property interests in the alley which the city council could not take away. *Id.* at 290–91. In *Stevens v. City of Dublin,* 169 S.W. 188 (Tex.Civ.App.—Fort Worth 1914, no writ), the court held that a municipality had exceeded its police powers in permanently closing a street that passed next to a school. Although neither opinion mentions the term "Due Process" nor invokes the Constitution, both cases do refer to property rights of the plaintiffs and the government's lack of authority to remove those property rights, which seems referable to Constitutional Due Process protections. Nevertheless, we fail to see, and appellant has not troubled itself to explain, how the property rights asserted in those cases are relevant to the instant case. We conclude that Du Pont has failed to demonstrate any violation of its Due Process rights.

Having overruled all of the arguments asserted by the appellant, we affirm the judgment of the trial court.