**Opinion issued April 30, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00135-CV

———————————

**PETER HARDSTEEN, PAULINA MAYBERG HARDSTEEN, AND
INTERVENOR TEXAS FARM BUREAU, Appellants**

**V.**

**DEAN'S CAMPIN' CO., Appellee**

---

**On Appeal from the 506th District Court
Grimes County, Texas
Trial Court Case No. 27885**

---

## MEMORANDUM OPINION

This appeal arises out of a summary judgment granted to Dean's Campin'
Co. on its claim for indemnity against Peter and Paulina Hardsteen and their
insurer, Texas Farm Bureau.

In two issues, the Hardsteens and Texas Farm Bureau contend that the trial court erred by (1) granting summary judgment to Dean and denying summary judgment to them on the indemnity issue and (2) awarding Dean prejudgment interest on attorney's fees and costs with an improper interest rate.

Because we conclude that the settlement agreement underlying Dean's indemnity claim did not require the Hardsteens or Texas Farm Bureau to provide indemnity to Dean, we reverse the trial court's judgment and remand the case to the trial court for entry of judgment in the Hardsteens' and Texas Farm Bureau's favor and a determination of costs.

### Background and Earlier Appeals in this Litigation

Nineteen years ago, a recreational vehicle Peter Hardsteen purchased from Dean caught fire and destroyed the Hardsteens' home and family vehicle. Peter Hardsteen sued the manufacturer of the RV (Rexhall), the manufacturers of various component parts incorporated into the RV, and Dean. In addition to product-liability claims against the other defendant-manufacturers, Hardsteen alleged that Dean negligently repaired the RV and violated various provisions of the Deceptive Trade Practices Act. *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–.63 (West 2011 & Supp. 2014). After paying insurance proceeds to Hardsteen, his insurer, Texas Farm Bureau, intervened in the suit. Dean cross-claimed against Rexhall for

2

indemnity owed an innocent retailer of a defective product. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.001–.005 (West 2011).

Peter and Paulina Hardsteen and Texas Farm Bureau (now collectively referred to as "the Hardsteens") settled with all of the named defendants except Dean in late 1999 for a total payment of approximately $286,000. The Hardsteens continued their litigation against Dean, asserting two causes of action: negligent repairs and violations of the DTPA. The Hardsteens did not assert a product-liability claim against Dean.

Several months later, in 2000, Dean amended its pleadings to assert a counterclaim against the Hardsteens for indemnity, relying on the following indemnity provision found in the Hardsteens-Rexhall settlement agreement:

> In addition to consideration of the above, Plaintiff [Peter Hardsteen], his wife, Paulina M. Hardsteen, and Intervenor [Texas Farm Bureau] do hereby agree to indemnify Defendants,[1] defend them, and hold them harmless from any claims, damages, attorney's fees, or amounts rendered against them by any third party, (including but not limited to Dean's Campin' Company) or incurred by the Defendants as a result of any such claim relating to the Occurrences or the Suit to the extent such parties may be found liable in any way to Plaintiff, Pauline Hardsteen or Intervenor.

Dean argued that this contractual indemnity provision in combination with the statutory indemnity it sought from Rexhall permitted Dean to seek indemnity from the Hardsteens. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 82.002 ("A

---

[1] The settlement agreement defined "Defendants" to include Rexhall and the component part manufacturers but not Dean.

3

manufacturer shall indemnify and hold harmless a seller against loss arising out of a products liability action . . . .").

Before trial, the Hardsteens successfully moved to dismiss Dean's indemnity counterclaim, arguing that Dean's amended pleading violated Rule 63, which prohibits pleading amendments filed so late as to cause surprise to the opposing party. TEX. R. CIV. P. 63.

Rexhall also moved for summary judgment on Dean's indemnity cross-claim asserted directly against it. Rexhall argued that it did not owe Dean statutory indemnity under section 82.002 because the Hardsteens were asserting non-product-liability claims against Dean and section 82.002 innocent-seller indemnity is only available for product-liability claims. In support of its argument, Rexhall relied on *Hurst v. American Racing Equipment, Inc.*, 981 S.W.2d 458 (Tex. App.—Texarkana 1998, no pet.),[2] which held that a seller may recover attorney's fees and costs associated with defending a product-liability claim but not those costs associated with defending a separate negligence claim in the product-liability suit. 981 S.W.2d at 463. The trial court granted summary judgment to Rexhall.

The Hardsteens proceeded to trial against Dean asserting only their negligent repair and DTPA causes of action. The jury found that Dean was not liable under

---

[2] As discussed below, the Texas Supreme Court later disapproved of the *Hurst* decision in *Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001).

4

either theory. After a final judgment was entered, Dean appealed the trial court's order striking its counterclaim for indemnity against the Hardsteens and the order granting Rexhall summary judgment on the chapter 82 indemnity cross-claim.

This Court reversed the trial court on both points. *Dean's Campin' Co. v. Hardsteen*, No. 01-00-01190-CV, 2002 WL 1980840, at *6–7 (Tex. App.—Houston [1st Dist.] Aug. 29, 2002, pet. denied) (mem. op.) (*Dean I*). In doing so, we noted that the Texas Supreme Court had disapproved of the *Hurst* language relied on by Rexhall in *Meritor Automotive, Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001). *Dean I*, 2002 WL 1980840, at *3–4. Applying *Meritor*, we held that Dean's right to indemnity from Rexhall was invoked once the Hardsteens alleged that the RV was defective and commenced their "product-liability action" with Dean as a named defendant. *Id.*; *see Toyota Indus. Equip. Mfg., Inc. v. Carruth-Doggett, Inc.*, 325 S.W.3d 683, 688–91 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

This Court further held that Rexhall was not entitled to summary judgment on Dean's statutory indemnity claim for indemnity from Rexhall unless it established that Dean did not qualify as an innocent retailer in the Hardsteens' product-liability suit against both Rexhall and Dean. *Dean I*, 2002 WL 1980840, at *4. Rexhall had not met its burden of showing that Dean was not an innocent retailer; therefore, the trial court erred in granting summary judgment to Rexhall on

that issue and denying Dean's claim to indemnity from Rexhall. *Id.* We also noted that, following the trial court's order granting Rexhall summary judgment on Dean's indemnity cross-claim, the jury determined that Dean was not liable to the Hardsteens, which meant that Dean had been adjudged an innocent seller and, as a result, had established its right to indemnity from Rexhall, under section 82.002, for its attorney's fees and costs defending against the Hardsteens' claims. *Id.* at *7.

In its first appeal, which resulted in our 2002 opinion in *Dean I*, Dean argued that we should not only reverse the summary judgment granted to Rexhall on its statutory indemnity claim but should also render judgment in Dean's favor because there were competing summary-judgment motions and the trial court erred in denying Dean's motion. We rejected that contention, observing that, when Dean moved for summary judgment, Dean's status as an innocent retailer presented a disputed fact issue that had yet to be resolved by the jury and that Dean did not present evidence of the amount of its attorney's fees and costs when it moved for summary judgment. *See id.* at *5. Instead of rendering judgment for Dean, we remanded the case "for determination of Dean's . . . attorney's fees and costs under section 82.002(a) of the Civil Practice and Remedies Code." *Id.* at *7.

Regarding Dean's second appellate issue, which challenged the trial court's order that struck Dean's counterclaim for indemnity from the Hardsteens based on Rule 63, we held, in *Dean I*, that the Hardsteens failed to establish that they were

6

surprised or prejudiced by Dean's counterclaim and, therefore, the trial court erred in granting their motion to dismiss Dean's claims. *id.* at *6 ("[W]ithout expressing any opinion on the merits of those claims, we hold that the trial court abused its discretion by striking them."). We remanded "for determination of Dean's supplemental [counter]claims" and the amount of Rexhall's indemnity obligation. *Id.* at *7.

On remand, Dean's claims were dismissed for want of prosecution. Dean appealed the dismissal, which was transferred to the Thirteenth Court of Appeals for resolution. *See Dean's Campin' Co. v. Hardsteen*, No. 13-05-00468-CV, 2008 WL 3984161, at *10 (Tex. App.—Corpus Christi 2008, pet. denied) (mem. op.) (*Dean II*). That appellate court again reversed the trial court, reinstated Dean's suit, and remanded the case with instructions to follow the mandate previously issued by the First Court of Appeals. *Id.* at *11. After this second remand to the trial court, Rexhall filed for bankruptcy protection and the litigation was stayed.

Dean and Rexhall later entered a stipulation, which they filed with the bankruptcy court. The bankruptcy court entered an order stating that the motion to lift the stay had been "settled by stipulation." Incorporating language from the stipulation, the order provides that (1) the stay is lifted "to permit the parties to continue the appeal in the Texas State Court and further prosecution of the cross complaint" and (2) "[t]o the extent Dean[] obtains an award against Rexhall, any

7

such award shall be the obligation of, and sought only through, Hardsteen and/or Texas Farm Bureau. Dean[] shall not seek any recovery against Rexhall or the bankruptcy estate."

With the stay lifted, Dean continued to pursue its indemnity counterclaim against the Hardsteens. Both sides moved for summary judgment. The trial court denied the Hardsteens' motion and granted Dean's. The final judgment awarded Dean recovery from the Hardsteens of over $200,000 in attorney's fees and costs, plus prejudgment and postjudgment interest at the rate of 10 percent per year for nearly 20 years.

The Hardsteens appeal this final judgment, raising two issues. First, they argue that the trial court erred by denying their summary-judgment motion and granting summary judgment to Dean because Dean had neither a contractual nor a statutory right to indemnity from them as they were merely the product's purchaser, not indemnifiers of Dean. Second, they argue that the trial court erred by awarding Dean prejudgment interest on attorney's fees and costs and by setting an improper interest rate.

**Summary Judgment**

Both parties moved for summary judgment on the indemnity issue. Rexhall's motion was granted; the Hardsteens' motion was denied. In their first issue, the

Hardsteens contend that Dean's indemnity claim against them fails as a matter of law.

## A. Standard of review on competing summary-judgment motions

A party moving for Rule 166a(c) summary judgment must conclusively prove all of the elements of its cause of action as a matter of law. TEX. R. CIV. P. 166a(c); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). A defendant moving for summary judgment on a cause of action asserted against it must negate as a matter of law at least one element of the plaintiff's theory of recovery or plead and prove each element of an affirmative defense. *Nelson v. Chaney*, 193 S.W.3d 161, 165 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

"When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *accord Gillebaard v. Bayview Acres Ass'n*, 263 S.W.3d 342, 348 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). The reviewing court should render the judgment that the trial court should have rendered. *See Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *Comm'rs Ct. of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *see also Gillebaard*, 263 S.W.3d at 347–48.

The propriety of summary judgment is a question of law. We, therefore, review the trial court's ruling to grant one party's motion and deny the other using the de novo standard. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

**B.      Whether the Hardsteens owed contractual indemnity that Dean could enforce**

We begin by noting that, but for its bankruptcy protection, Rexhall owed a statutory obligation to indemnify Dean—an exonerated, innocent seller of its product—for Dean's attorney's fees and costs incurred defending against the Hardsteens' claims. *See Dean I*, 2002 WL 1980840, at *3–4 (relying on TEX. CIV. PRAC. & REM. CODE ANN. § 82.002 and *Meritor*, 44 S.W.3d at 90); *see also Toyota Indus. Equip. Mfg.*, 325 S.W.3d at 688–91. This duty arises from section 82.002 of the Civil Practice and Remedies Code, which provides:

> A manufacturer shall indemnity and hold harmless a seller against loss arising out of a products liability action, except for any loss caused by the seller's negligence, intentional misconduct, or other act or omission, such as negligently modifying or altering the product, for which the seller is independently liable.

TEX. CIV. PRAC. & REM. CODE ANN. § 82.002(a).

But the issue presented in the competing summary-judgment motions is not whether Dean has a right to statutory indemnity from Rexhall but, rather, whether Dean has a contractual right to indemnity from the Hardsteens. Dean contends it does because (1) the Hardsteens owed contractual indemnity to Rexhall arising

10

from the Hardsteens-Rexhall settlement agreement and (2) Dean can maintain an action against the Hardsteens to collect on that obligation.

Dean offers three theories to support its claim that it can step into Rexhall's shoes and obtain indemnity from the Hardsteens: (1) it is an intended beneficiary of the Hardsteens–Rexhall settlement agreement; (2) the Rexhall–Dean bankruptcy stipulation, together with the bankruptcy court order, establishes a right to indemnity; and (3) the bankruptcy stipulation, together with the bankruptcy order, assigns Rexhall's right to indemnity from the Hardsteens to Dean under the settlement agreement. Relying on these three alternative theories, Dean attempts to enforce Rexhall's indemnity rights against the Hardsteens.

The threshold issue is whether the settlement agreement between the Hardsteens and Rexhall requires the Hardsteens to indemnify Rexhall for its indemnity obligation to Dean. If it does not, then Dean cannot recover on its indemnity claim against the Hardsteens. Therefore, we begin our analysis by determining whether the Hardsteens–Rexhall settlement agreement requires the Hardsteens to indemnify Rexhall on Dean's indemnity claim.

### 1.  The Hardsteens–Rexhall indemnity contract

The Hardsteens' indemnity obligation is set forth in—and limited by—their settlement agreement with Rexhall. The agreement provides:

> In addition to consideration of the above, *Plaintiff [Peter Hardsteen], his wife, Paulina M. Hardsteen*, and Intervenor [Texas Farm Bureau]

11

*do hereby agree to indemnify Defendants [including Rexhall]*, defend them, and hold them harmless *from any* claims, damages, attorney's fees, or *amounts rendered against them by any third party, (including but not limited to Dean's Campin' Company*) or incurred by the Defendants as a result of any such *claim relating to* the Occurrences or the Suit *to the extent such parties may be found liable in any way to Plaintiff, Pauline Hardsteen or Intervenor.*

(Emphasis added.)

Dean contends that the Hardsteens owe Rexhall contractual indemnity because a claim was "rendered" against Rexhall when this Court held, in *Dean I*, that Dean was entitled to innocent-retailer indemnity. Dean argues that the alternative basis for contractual indemnity—a claim being "incurred" by Rexhall—does not apply. Dean concludes, therefore, that all aspects of the provision following the terms "or incurred" have no application and do not impede its suit. Under Dean's reading, the Hardsteens owe contractual indemnity to Rexhall to cover Rexhall's statutory indemnity to Dean, regardless of whether Dean was found liable to the Hardsteens.

The Hardsteens argue, in response, that the final phrase of the indemnity provision—"to the extent such parties may be found liable in any way to Plaintiff, Pauline Hardsteen or Intervenor"—acts to limit the Hardsteens' contractual indemnity obligation to apply only if Dean (referred to in the provision as "such parties") has been held liable to the Hardsteens. We apply the relevant rules of

contract interpretation to construe this indemnity provision and determine which reading prevails.

### a. Rules of construction

A settlement agreement is a contract and is governed by the same rules of construction that apply to all contracts. *Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (op. on reh'g). Contracts are construed to give effect to the parties' intent as expressed in the written instrument. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996); *SLT Dealer Grp., Ltd. v. AmeriCredit Fin. Servs., Inc.*, 336 S.W.3d 822, 828 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "The contract must be read as a whole, rather than by isolating a certain phrase, sentence, or section of the agreement." *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995)). "Contract language is given its plain grammatical meaning unless doing so would defeat the parties' intent." *SLT Dealer Grp.*, 336 S.W.3d at 828; *DeWitt Cnty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999).

"When a court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the court is obligated to interpret the contract as a matter of law." *Parks*, 1 S.W.3d at 100. "A term is not

ambiguous because of a simple lack of clarity. Nor does an ambiguity arise merely because parties to an agreement proffer different interpretations of a term." *Id.* An agreement is ambiguous when "application of established rules of construction leaves an agreement susceptible to more than one meaning" and both potential meanings are reasonable. *Id.* If the contract can be given a certain or definite legal meaning, it is not ambiguous and should be construed as a matter of law. *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997).

With regard to indemnity contracts in particular, courts may not expand the parties' rights or responsibilities beyond the limits defined in the indemnity contract. *DBHL, Inc. v. Moen Inc.*, 312 S.W.3d 631, 635 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 458 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Indemnity agreements are strictly construed in favor of the indemnitors, in this case, the Hardsteens. *Webb v. Lawson-Avila Const., Inc.*, 911 S.W.2d 457, 461 (Tex. App.—San Antonio 1995, writ dism'd); *Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d 274, 281 (Tex. App.—Dallas 1992, writ denied).

### b.  Interpreting the contract

Dean asserts that the correct interpretation of the indemnity provision is to view it as addressing two distinct situations. The first situation would be addressed in the first half of the paragraph before the word "*or*," and the second would be

14

addressed in the second half of the paragraph after the word "*or*." According to Dean, the first situation "allows indemnity when the claims/damages (attorney fees, expenses etc.) are 'rendered' against Rexhall." The second situation, again according to Dean, deals with an "alternative scenario for indemnity, i.e. 'incurred' from a liability finding." Dean explained its argument as follow:

> The first part was clearly to deal with a simple fee and expense damage claim when Appellee [Dean] got a defense verdict. The second part was for when a verdict was entered against Appellee [Dean] in favor of Appellants [the Hardsteens] unrelated to any alteration of the RV, i.e. Appellee [Dean] being liable, but an as innocent retailer.

Dean contends that the facts of this suit implicate only the first situation because a claim was "rendered" against Rexhall when this Court issued its 2002 opinion in *Dean I* stating that Dean "was entitled to recover both its attorney's fees and its costs . . . from Rexhall under section 82.002(a) of the Civil Practice and Remedies Code." *See Dean I*, 2002 WL 1980840, at *7. Dean argues that the Hardsteens assumed the obligation to pay Rexhall's debt to Dean under the terms of the first half of the settlement agreement's indemnity provision and that the phrase "as a result of any such claim relating to the Occurrences or the Suit," which is found after the word "or" in the provision has no application.

This interpretation would result in an unlimited indemnity obligation on the part of the Hardsteens, covering all claims by all third parties, so long as a judgment was rendered against Rexhall or any of the other defendants on any third

party's claim related to any defective Rexhall RV. This interpretation does not limit the Hardsteens' indemnity obligation to claims that arise out of the underlying RV fire or claims brought by, through, or under the Hardsteens. We conclude that such a reading of the indemnity provision is unreasonable and properly rejected. *See Vill. Place, Ltd. v. VP Shopping, LLC*, 404 S.W.3d 115, 129 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (stating that appellate courts "avoid constructions that would lead to absurd results.").

The phrase that places a reasonable limit on the scope of the Hardsteens' duty to indemnity—"as a result of any such claim relating to the Occurrences or the Suit"—is found after the word "or." That limiting phrase necessarily modifies all situations covered by the indemnity provision because any other reading would make the Hardsteens liable for claims unrelated to their suit or their settlement. This limiting phrase modifies the entire indemnity provision, including the clause before the word "or."

This reasonable construction of the indemnity provision is based on reading the provision as a whole. *See Baty*, 63 S.W.3d at 848. The Hardsteens agreed to indemnify Rexhall for any amounts rendered against it by any third party, including Dean, or incurred by it "as a result of any such claim relating to the Occurrences or the Suit," but only "to the extent such [third] parties[, including Dean,] may be found liable in any way to Plaintiff, Paulina Hardsteen or

16

Intervenor." *See Wellington Underwriting Agencies Ltd. v. Hous. Exploration Co.*, 267 S.W.3d 277, 287–88 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 352 S.W.3d 462 (Tex. 2011) (holding that limitation phrases in indemnity agreement must be read in connection with clauses they modify).

Under this more reasonable construction, the term "or" does not divide the indemnity paragraph into two distinct halves, each addressing different scenarios, as Dean suggests. Instead, it delineates two types of obligations that must be indemnified: claims/fees/amounts that are "*rendered*" against the settling defendant pursuant to a third party's claim and claims/fees/amounts that are "*incurred*" by the settling defendant while defending against such third-party claim. Under the terms of the indemnity provision, both must be indemnified. The two limiting phrases that follow after the "rendered . . . or incurred" clauses modify the entire paragraph.

The Hardsteens-Rexhall indemnity provision, therefore, would be diagramed as follows:

1. In addition to consideration of the above,

2. Plaintiff [Peter Hardsteen], his wife, Paulina M. Hardsteen, and Intervenor [Texas Farm Bureau]

3. do hereby agree to indemnify Defendants [Rexhall and all of its co-defendants, except Dean], defend them, and hold them harmless from

17

4.     any claims, damages, attorney's fees, or amounts

    a.     rendered against them [i.e., the "Defendants"] by any third party, (including but not limited to Dean's Campin' Company) or

    b.     incurred by the Defendants [i.e., "them"] as a result of any such claim

5.     relating to the Occurrences or the Suit

6.     to the extent such parties [i.e., "third party," like Dean] may be found liable in any way to Plaintiff, Pauline Hardsteen or Intervenor.

In addition to concluding that this is the only reasonable interpretation of the provision, we note that our interpretation is consistent with that advanced by the parties at the time they agreed to the provision, as evidenced by their contemporaneous legal arguments.[3]

---

[3]     In the first appeal, *Dean I*, Rexhall argued that the *Hurst* approach was the correct method to determine whether a section 82.002 statutory indemnity obligation had been invoked. *Dean's Campin' Co. v. Hardsteen*, No. 01-00-01190-CV, 2002 WL 1980840, at *4 (Tex. App.—Houston [1st Dist.] Aug. 29, 2002, pet. denied) (mem. op.); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 82.002 (West 2011). Under the *Hurst* approach, a seller could obtain indemnity from a product manufacturer for attorney's fees and costs incurred defending a product-liability claim but not those incurred defending a negligence claim. *Hurst v. Am. Racing Equip., Inc.*, 981 S.W.2d 458, 463 (Tex. App.—Texarkana 1998, no pet.).

Had the *Hurst* approach (that Rexhall was championing) been approved by the Texas Supreme Court, the indemnity provision would have insulated Rexhall from any indemnity to Dean so long as the Hardsteens did not amend their petition to assert a product-liability claim against Dean, regardless of whether Dean was found liable under the theories the Hardsteens were pursuing. If the Hardsteens did amend, Rexhall might have to indemnity Dean, but the Hardsteens were contractually agreeing to indemnity Rexhall to the extent their change in course resulted in additional recovery from Dean.

## 2. The Hardsteens do not owe contractual indemnity on Dean's claim

The effect of our construction of the settlement agreement is that the Hardsteens are required to indemnify Rexhall for any claims/fees/amounts rendered against Rexhall in favor of Dean or incurred by Rexhall as a result of litigating that claim, if the claim/fees/amounts relate to the Hardsteens' suit, but only to the extent that Dean is found liable to the Hardsteens. This construction of the indemnity provision takes into account the parallel structure of the "rendered . . . *or* . . . incurred" clauses, while giving effect to all surrounding phrases as well.

It is undisputed that Dean was not found liable to the Hardsteens. Therefore, relying on applicable rules of contract interpretation, we conclude that the indemnity provision does not impose on the Hardsteens a contractual obligation to indemnity Rexhall. Because the Hardsteens do not owe indemnity to Rexhall, Dean's efforts to step into the shoes of Rexhall to enforce the indemnity obligation

---

Once *Hurst* was subsequently rejected, it became possible that Rexhall would have to indemnity Dean for the claims asserted, even if the Hardsteens did not amend their petition. The Hardsteens would then owe Rexhall indemnity only if they actually recovered from Dean.

Rexhall's legal argument sheds light on why Rexhall agreed to settle with the Hardsteens while Dean's liability was still unclear.

are unavailing.[4] Accordingly, we conclude that the trial court erred in granting judgment in Dean's favor on its indemnity counterclaim.

Having construed the indemnity provision in the manner that the Hardsteens urged in their summary-judgment motion, as a matter of law, we conclude that the trial court erred in denying their motion. *See FM Props. Operating Co.*, 22 S.W.3d at 872 ("When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented.").

## Conclusion

We reverse the trial court's judgment and remand the case to the trial court with instructions that judgment be entered in the Hardsteens' and Texas Farm Bureau's favor on Dean's indemnity counterclaim and for a determination of any

---

4    To the extent Dean argues that the bankruptcy court order recognizes Dean's right to collect indemnity "in Rexhall's name" from the Hardsteens independently of the settlement agreement, we conclude that the trial court erred in granting summary judgment to Dean on its indemnity claim on that basis as well.

The bankruptcy court order states that it is addressing Dean's ability to continue with "further prosecution" of its claims; it does not purport to resolve them. Furthermore, the order states, "To the extent Dean[] obtains an award against Rexhall, any such award shall be . . . [the obligation of the Hardsteens and Texas Farm Bureau]." The phrases "to the extent" and "any such" are conditional in nature and in no way adjudicate Dean's right to an award. The settlement agreement does not provide Rexhall a right to indemnity from the Hardsteens; therefore, even with the bankruptcy order, there is no basis for Dean to look to the Hardsteens to collect on Rexhall's indemnity obligation.

20

court costs. As a result of this disposition, Dean is not entitled to any of the attorney's fees, costs, or interest it was awarded, and we vacate the award.[5]

Harvey Brown
Justice

Panel consists of Justices Keyes, Bland, and Brown.

---

[5] Because we have resolved the first issue in the Hardsteens' favor, it is unnecessary for us to address the Hardsteens' second issue challenging the amount of interest awarded to Dean by the trial court.